Our second case this morning is case number 4120480, Blickenstaff v. Blickenstaff, and appearing for the appellant we have William Colhase and for the appellee Jeffrey Riva. You may proceed. May it please the court, counsel, I'll turn first to the issue of relevance. We have two different discovery requests that we're dealing with today. The first being a subpoena. The second request was issued about a year later. The subpoena was issued at a time when there was no pleading on file to which it related. In this case, we're dealing with a probate of a will. It was a will contest that was filed in 2006 in early 2010. A motion for summary judgment by the respondent in the will contest was denied. Then in March of 2010, the subpoena was issued. This is more than a year after discovery closed in the will contest, and also more than a year prior to the time when the petition to remove the executor was filed. So what we have is a situation where legatees in the probate of a will simply issue a subpoena for lots of documents, to say the least, to the executor any authority or logic to support the idea that an interested person, a legatee in a probate case, can simply start issuing subpoenas because they would like to get information. However, that's exactly what happened in this case. Now, the argument is made that, well, you know, the rules, Rule 201 of the Supreme Court rules support this because you can have discovery regarding the subject matter of a case, and the subject matter of this case is the entire administration of the estate. So we don't have to worry about claims or offenses, as it says in Rule 201B, but rather it just has something to do with the estate. That's fair game. This has If there wasn't something going on that this was relevant to at the time the subpoena was issued, we have sort of an after-acquired relevance concept that we can rely on because now we can say, well, a year later the petition to remove the executor was filed, and therefore the subpoena that was issued a year prior becomes proper and is seeking relevant information. Then, which there's no support for, and I don't think should be supported by this court. Then they say, well, we have a current relevance issue in that we say that John Blickenstaff, as executor, is really defending his personal conduct. That's bad, and in fact, that's part of our petition to remove, and therefore it's proper during the course of the will contest to obtain the However, that claims that the executor has some kind of personal interest that motivates them to defend the will, do not make the defense of the will improper or the use of estate assets to defend the will improper, because the interests of the executor as executor and personally are aligned. The will is to be defended. Really, the only time that an executor would have a conflict under those circumstances would be if declaring the will invalid would benefit the executor personally, which is hardly the case here. So there is no issue at all to which the detail in the fee bills relates. So we go past that issue and they say, well, you know what, even if we don't have that issue, someday there's going to be an argument about the reasonableness of those fees, and we can't deal with that issue until we get the bill detailed. However, there is no issue pending now regarding that. There may be in the future, there may not be. But to base relevance on something that might happen in the future. Don't the fees have to be approved by the court? Ultimately, they do. Well, how's the court going to approve the fees if there's not a breakdown on what the fees represent in terms of hours spent as to what services were performed, etc.? At that point in the case, which we're now into our seventh year on, when that issue comes up, the detail must be produced. Right now, the will contest hasn't been tried. The motion for summary judgment was denied in January of 2010. Well, why would we say it's abusive of the trial court's discretion to provide this detail in these bills, even though it's not needed right now, but may be needed in the future? Because it's during the course of an ongoing case, the will contest, it is not appropriate to have a look at the other side's bills during the case. Allowing that, we say, is an abuse of discretion. We agree that there may be an issue in the future, but that issue is not before the court now. When would it be appropriate in the future? When? Yes. At such time as any party raises an issue regarding the reasonableness of the fees or on a petition to approve a final report. Hasn't that issue, the first of those, already been raised? No. The issue that they're raising is you're defending your personal interest. The issue of reasonableness has not been raised. What you're doing is you're just defending John Blick and staff personally, and you shouldn't use state assets to do that. That's the only issue that's been raised so far. So, with respect to the subpoena, for all of those reasons, it's just not relevant to get the bill detailed at this time. They have everything else, the checks. This is an action pending in the Circuit Court of Woodford County? Yes. Will contest? Yes. Six years? Yes. What is this, the Chancellor's Division of Cook County? What's going on? We have that same question. One would think that the goal here would be to get the will contest tried. However, it seems that instead of wanting to try the will contest, the focus is on anything else but. And is Judge Feeney the same judge who's been in this case throughout? No. At some point, there was a change of approach due to a conflict, but for the past two, I might be wrong about this, but I think the past four years, it's probably been Judge Feeney. Has there been case management conferences in this case? There have been a number of appearances before the court on various matters, including discovery matters, and including scheduling issues, but in terms of a classic, we are going to have a case management conference, not since my involvement in the case. Okay. Turning now to the request to produce. This came in September of 2011. The documents of concern to us with respect to the request to produce are, one, a year's worth of the personal financial records for the personal financial accounts of John Blickenstaff. Number two, three years of John Blickenstaff's personal tax returns. And three, the bill details for the attorney's bills for the defense of the petition to remove the executor. With respect to the personal financial information, our position is that it's just so unbelievably out of bounds. It's an abuse of discretion unquestionably. It has everything to do with harassment and nothing to do with… They said we want it, and the judge stated that his philosophy with respect to discovery was liberal. That's it. There's no detail, and I'm sure Mr. Riva can fill you in more on that, but there's no detail presented in the trial court saying this is what we're going to find that's relevant to an issue that's pending before the court when we look at his personal checking account. It's not there. It's not relevant. It's just harassment. So the trial court didn't say those will be important in order for me to eventually decide whether the compensation he was giving himself was reasonable. That is correct. That was not said. That's the argument they at least generally make in their brief, though. With respect to the tax returns, yes. With respect to the personal financial information, it's really, oh, we'd just like to know about his financial resources. That argument doesn't really extend to reasonable compensation. I think maybe they spin it that way a little bit, Your Honor, but on the compensation issue, it's really the three years of tax returns. Now, the first point with respect to the compensation issue is that it's not an estate issue, period. Wyvern Blickenstaff owned stock in Blickenstaff Farming Corporation. Since the probate has not been completed, that stock has not been distributed, it remains in the estate. So the executor votes the stock, but the assets of the corporation are not assets of the estate. It's just fundamental. If you look at any corporation, it's a fundamental concept that the assets of the corporation are not assets of the shareholders. And whatever happens to the assets of the corporation, including using those assets to pay compensation, is not a use of the shareholders' assets. And there are, of course, alternatives available to shareholders to seek relief if they have issues with respect to the management of the corporation in which they own stock. This, however, is not an estate issue at all. It should not ever have been permitted. It is not a proper part of any effort to remove the executor. It's a corporate law issue. It belongs in a different venue. We shouldn't even be talking about it. However, when you get to this question of what is reasonable compensation, let's assume that it is properly part of the estate, the tax returns, which show income from all sources plus all types of other information, do not tell you and are not relevant to proof of what is reasonable compensation for John Blickenstaff's efforts as president of Blickenstaff Farming Corporation. If he made a little bit elsewhere, would that say that he's not worth very much? If he made a lot elsewhere, does that mean that he could be underpaid? Say, if he made a million dollars doing something else, does that mean he should be paid more at Blickenstaff Farming Corporation? Absolutely not. It doesn't have any relevance at all. And again, we have disclosure of private financial information that is not relevant, not appropriate to produce. In this case, it makes no sense whatsoever. It doesn't advance any issue. It doesn't help anyone do anything. All of the payments from this corporation have been disclosed. Every, every scrap of paper, every bill, every check, every tax return, everything has been disclosed. His personal tax returns add nothing to the picture. If you want to say, well, you know, there's some tangential relevance to let's see what else this guy is doing, that relevance is so marginal when you weigh it against the bigger picture, when you weigh it against the invasion of privacy, when you look at what's really going on in this case, why this probated state is still open seven years, after it was open, there just shouldn't be any order to disclose that personal financial information. They have everything they need to make every argument they want to make without invading the executor's personal privacy. I want to turn now to the privilege issue. Our position is, and candidly the privilege issue was not extensively argued in the circuit court, but our position is it was raised and that under the Illinois Supreme Court's decision in Decker, that is enough to raise the rebuttable presumption that the fee bills, the communications between the attorney and the client that's part of their professional relationship are privileged. And there was never any challenge on that basis. The only challenge that was made was we get to see the bills because you are defending your personal conduct that we have challenged. Then say the attorney-client privilege does not apply. Our position is that once the issue was raised and it was raised, the presumption was raised, the presumption was not challenged, was not rebutted, therefore the information is privileged, it's abuse of discretion to require disclosure of privileged information. For that additional reason, we request that the discovery orders at issue be reversed, the contempt finding be reversed. If there are no questions, I'll sit down. Thank you, counsel. You'll have rebuttal. Mr. Riva, please proceed. May it please the court, counsel, good morning, your honors. Good morning. I had quite a lengthy argument, but I'm going to dump that and try to answer some of the questions that were put to opposing counsel at the beginning here unless someone wants to not have me do that to begin with. One of the points I think that was made was why have we, why has it taken so long for us to get resolutions mattered. There was extensive discovery, extensive summary judgment practice, the judge took the case under advisement, and then once he ruled, we ended up in a situation where we then asked for the discovery, there was the motion to quash, that's part of what we're here for, we've been asking for these attorney's fees bills for two and a half years. We're trying to make it sound like this is all our fault here, but it's their fault. They're the ones that didn't produce those things, even after this motion to quash was denied by Judge Feeney. Two and a half years, they still didn't do it, we had to bring a motion for sanctions on that. In addition, Judge Feeney, once we filed the petition to remove the executor, he decided that that had a more immediate need because it had to do with actual allegations of waste or mismanagement of the estate, that was something he wanted to get his arms around because he thought that was more pressing if there was money that was being expended when it shouldn't have been, he wanted to deal with that. So he put us on a course where that was to be decided before the will contest, and then again, more discovery, more objections, more motions, and now this appeal, so unfortunately that adds up to six years. The second question, actually it was the first question that was posed, and that is, where's the abuse of discretion here? This is an argument that one would make in the trial court as to why there's either privilege or there's irrelevance. But as the court is well aware, abuse of discretion is the most deferential standard, and we don't think they've come within a comforting mile of showing that the judge actually abused his discretion here. The first argument they make is, let's go back to the subpoena, and the only thing we're talking about for the subpoena are the attorney's fees for the defense of the will contest. That's all that has to do with the rest is later in the case. And they say, as counsel summarizes the history of it, they say, well, wait a second, you don't have any right to get this because discovery is closed in the will contest. And then we point out to Judge Feeney, if you look in the record, we actually sent the subpoenas with enraged Lickenstaff. We didn't even have the caption saying that this is the will contest. We're not saying that we can do discovery beyond the will contest discovery deadline. What we are saying, and we cite the court, there's statutory duties of an executor and powers of the court to require during the course of an open probate administration to account and to produce records. And they think we did it the wrong way. I don't remember seeing anything in the record that says the subpoena was not the proper way of doing it. But frankly, I don't think it really matters. The point is, the issue was raised for the court, and we presented the argument that this is not, you know, somebody ran through a red light, and now the defendant wants to get the attorney's fees bills for the plaintiff's attorney to see what he's doing. Totally, totally different issue. Because we have an open probate proceeding, we have stock in this company, then we have non-stock assets that even under the will that's being challenged are divided equally. So we have attorneys, Mr. Cole Acesperm is probate's actual attorney, not only representing John Lickenstaff on the petition to remove, they're actually the attorneys for the probate estate. And they are, I'm assuming, doing work submitting bills. So it makes for kind of a confusing, every couple of different hats are being worn here. But the point is, there's still the administration of the estate that's going on. We think we're entitled, even if there was no specific petition to remove or a specific objection to fees, we think when you're in probate, everything is fair game. There's statutory duties that say that. And we don't believe that the judge abuses discretion in this case by recognizing that very point, which is, we're not limited to a petition on file. The whole idea in probate, it's one large proceeding. If we had filed objections to these fees without having seen the fees, I'm assuming the argument would be, you're going to be sanctioned because now you're asking the court to say the fees are no good, you haven't even seen the bills. So all we were trying to do was get the bills. And the record will show, even through 2009, the estate, through John Lickenstaff, paid the defense of the billed fees. That's well over $100,000 through 2009. And obviously it's way more than that at this point. So this is not a minuscule point. And I think eventually it does bear study that at some point the reasonableness of these fees are going to have to be raised. As Mr. Colhase concedes, even if at the time the subpoena was argued on the motion to quash, there was no pending petition other than the overarching administration of the estate, they never produced anything. So by the time we get to the point where we're on the motion for sanctions, which is what leads to the contempt ruling, which is why we're here, all of that is now relevant in the context of this case. I think it would be a travesty to take the procedural course at this point because we didn't have a specific petition on file then, but then we did later when Judge Feeney actually ruled. Now we've got to go back and argue the same thing with Judge Feeney? I think that's a technicality that I don't think is prudent to follow at this point. So clearly on the relevance of the fee bills, there's no abuse of discretion. This relates specifically to an issue in the case now, which is our argument and allegation that John, as executor, wasted or mismanaged the estate by paying attorney's fees for what, in practical terms, is his own defense. He's the one getting all the benefit of this will after years and years of previous wills that was for an equal distribution. Now, let me jump ahead to the request to produce. The request really deals, again, with two different animals here. One is John's personal financial documentation and the other would be the attorney's fees that are actually generated in defense of the petition to remove. Now, keep in mind, again, if you look at the record, counsel suggests that it's an open and shut case that any executor can not only use estate money to defend a will contest, even if he's the one who's blamed for undue influence in creating it, and also you can then, as the executor, use estate funds to defend a petition to remove yourself for doings the very acts that you have committed. It seems to me that in those situations, fees should be approved as they go along, not at the end. But be that as it may, eventually they're going to have to be determined. And again, had we gotten these fee bills when we were supposed to two and a half years ago, we may have already had an interim hearing on the reasonableness of the fees up through a certain date, but we've never been given any of them, so we have had no way of actually putting a competent petition together and saying, well, they overbilled this or they overbilled that. We haven't seen anything other than, as Mr. Kolhe says, we see an accounting that just shows, okay, month of November, $6,000, month of July, $8,000. That doesn't give us any bearing on what actually was done. And I think it's crucial that when we focus on the record here, when we file a petition to remove, Mr. Kolhe's filed a motion to dismiss and to strike. But if Beeney heard their arguments on this issue of, well, you automatically get a right to defend the will by using state funds to pay for it, he did not strike that part of our petition to remove. So he either agreed with us or at least thinks that that's a question he has to resolve. Well, counsel, let me get to the chase on what concerns me in this case, the personal financial documents. I don't understand how they are relevant and discoverable. Okay. That's my concern. Okay. Little, very little bit of background. This farming operation, basically Glickenstaff, even when Wyvern was alive, two fellows by the name of Hastings are basically tenant farmers. They're the ones that do the farming work. Okay? So keep that in mind. Also, the farm lease says Hastings provides machinery and equipment. So the gravamen of the petition to remove is really twofold on that issue. John, against the terms of the lease, has been buying machinery, putting up buildings, things of that kind. John never took a salary, never took a bonus through this entire period of time. All of a sudden, now we're in a situation where he himself, as you can see, votes his own shares and the state's shares and the corporation, all of a sudden votes himself a salary and bonus and an increased bonus. So with that background, here's what we believe. Again, judge may say when we get to a trial, we can't get it into evidence. But that's not what we're here for. We're here for could it be discoverable and could it lead to the discovery of admissible evidence. We believe if we get to see the financial records, if we see what other endeavors, and we say in the record that John Blickenstaff has another corporate entity that he works for, he also has an employer, we believe that we should be able to see what he makes in these other endeavors. So for a couple of reasons. One, if he's working two full-time jobs, that may cut into and show that he is unable to work the type of hours that would allow him to build this farming corporation, $40,000 or $50,000 a year. It also would show that not only does he have enough hours in the day to do all of this, we can also show... Could have asked for his medical records to see if his physical health was good enough to do it. Well, I hope we're here on that. Well, that seems to me about as relevant as the stuff you asked for. Well, I think it really isn't, if I might continue, because it's not just a matter of finding the number of hours. The amount that he works that will also show a compensation rate for him, that could very well be relevant when we would attack how many hours he has that he works on this farming corporation versus his hourly rate. What is he? Call himself a farm manager? Is that why he's compensating himself? Well, he's technically president of the corporation. I don't know what he calls himself. It's basically what he's doing, isn't it? Managing the farm? Our view is, Hastings running this, he's just taking money for basically doing nothing, to be frank. Just overall looking after... That may be true, but my comment is to both of you, really. You've got an estate here that's been open for over seven years. The decedent passed away ten years ago. It's time to wind it up. It's time. It doesn't do anybody any good to keep this going on and on and on. You know, that's just shameful. And I would offer, I'm not going to take the blame for shameful, but I will offer one point I think, I would assume Mr. Coase would agree. The issues are presented, we've made some arguments about waiver and they say we didn't raise privilege the right way and we say they didn't produce the privilege argument the right way. I think the last thing we want is to go back and have to start over on all of these discoveries. Well, Counselor, we've seen a lot of these cases. I've never seen one where we talked about personal financial documents, the kind that you're asking for here. This is, I guess, next to medical records, the most personal kind of stuff that the individual has. And it seems to me there ought to be a compelling basis shown as to why you need it. And it's hard for me to describe how far afield from a compelling basis the arguments you've just presented to us are. Well, but I'm not done if I might. Well, you better add to it real quickly, Counselor, whatever else there is, because so far you haven't given me a hint to account for why this kind of broad order is appropriate. Okay. I will do that right now. Okay. One thing I think it's important to know for the record, remember, there's no transcript. You won't have anything in the record as to what was argued in front of Judge Feeney. I need it to me now, Counselor. Here's the point. There's a number of points. There's allegations in various petitions that we will want John to account for any monies that he's taken. In addition, they've raised on the petition for preliminary injunction, which is still pending, that this case is about money and that there's an adequate remedy at law. That seems to us to show that John's financial – if they're trying to say that he would have the money to pay back this effort at some point, you are going to have some relevance to what he has in terms of assets or what his tax returns show. In addition, on the bank statements, there may be something in the bank statements that show that he has paid certain attorney's fees bills, personally, that will dovetail when we eventually see, hopefully, the other attorney's fees bills that the estate paid. In addition, we believe that if – I think with Judge Feeney, and again, we don't have any way for you to look at what Judge Feeney was thinking, obviously, or what even the arguments were, because you don't have a transcript. But I remember arguing this point that the financial part of this is all relevant on the attorney's fees issue and the compensation issue, because this is not just a question of reasonableness, it's also a question of necessity. We made this argument to Judge Feeney, and the point being on the necessity, we need to see his tax – if he's going to argue that I didn't have the money to pay myself to pay these attorney's fees, that's why I had to dip into estate money, we need to see that. We need to be ready for arguments. We can't come back to you after the fact, and then it turns out that they've made arguments that we needed his financial records to rebut. So, and again, they did not – they made a blanket assertion. You don't get anything. They didn't say, well, you know what, we'll let you just see one part of this, or we'll give you one tax return, we'll give you the front of the tax return, and we'll give you one schedule. They said, we're not giving you anything. And because of that, we've had to pursue this to find – to get anything. I have to interrupt in your answer, and I still have no idea what the basis of this claim is, counsel. Well – Is this the best you've got? I've done my best. I think it's all relevant to his – that's what the judge said. He said these are all – this is all relevant to what his hourly rate for compensation would be, the number of hours that he would work or could work, and the – His personal tax returns. You can't just, for instance, depose him or ask him questions about how much he worked and what he earned. You have to see his personal tax returns as a matter of discovery in order to prepare for trial. I would say exactly yes, and we've cited cases in our brief that say the whole idea of discovery – somebody can say whatever they want in that position. You're still entitled to test that, to impeach, to test the veracity of what is said. It's right in our brief. It's one of your own. But discovery is limited to relevant information, right? Pardon? Discovery is limited to relevant information, right? Relevance from the standpoint of whether it could lead to admissible evidence. So we need to see that. There may be something – again, the cases, if you look at what's cited in our brief, those cases say give the tax returns. They may not be admissible, eventually, when you get to trial, but they still need to be there for possible impeachment, possible testing the veracity of testimony when it does come up. So we think we're entitled to those documents. I don't think there's been an abuse of discretion shown here because they don't have a transcript showing that they even made any of these arguments. I mean, they're arguing things about weighing the benefits of this versus invasion of privacy. That was never argued. That's not in the record. I see my light's on. Did you have any questions about privilege? I think the question gave, in one sentence, my statement. That is, we think there's waiver. We think there's – they didn't meet the threshold, because they never produced for Judge Feeney or this court what the bills even are. I don't know how anyone could figure out, is the date on a bill privileged or an address of John Blinkenstaff? It's up to them to focus in, and they never did that. But overarching beyond all of that, it doesn't really matter, because when you get to the end of the day, when these fees were generated, these bills were prepared, they had to know, either at the beginning or in the middle or the end, they're going to need their bills to establish a right to have the estate pay this money. Confidentiality was never intended. There's never been a privilege since the first entry in any bill. Counsel, you're out of time. Thank you, Your Honor. Rebuttal, please. There are procedures under the Probate Act with respect to accounting and discovery of information per citation. Those were not followed, never suggested. With regard to John's personal benefit, they have no case law. We have two cases directly on point. There's no conflict. There's no issue with defending the will when you're personally charged with misconduct. All of this with respect to the corporation is not an estate issue, but the president doesn't work on an hourly basis. That's not how you determine what reasonable compensation is. It's pointless to argue about what didn't or did happen in the trial court, but the judge never said that there was any hourly rate or that he needed the tax return to review the hourly rate. This court, with respect to the discovery of the financial information, I apologize that I can't cite the case. It's out of McLean County. This court has ruled that personal financial information, unlike insurance coverage, is not discoverable pre-judgment. Again, I apologize I can't cite the case. Fairly recent terms of years. Does this land lease on a cash rent basis or crop share? Share. Crop share? Yes. Okay. There's plenty of evidence with regard to what the president of the corporation does. In addition to putting up with outrageous demands of harassment, which has some value, he does a lot to work on the farm, and the idea that buying equipment and improving the farm with buildings as a basis to remove an executor is hard to get a hold of. Justice Appleton has admonished us that enough is enough. There's been enough time in this case. This court has very broad powers by rule to do anything that can be done in a trial court, and we welcome any order that will advance the conclusion of this case. Thank you. Thanks to both of you. The case is submitted. The court stands in recess.